*KYH*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

✓ FILED ___ ENTERED
___ LOGGED _____ RECEIVED

3:13 pm, Mar 26 2026
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ R.C. ___ Deputy

UNITED STATES OF AMERICA

v.

DANTE LAFAVORS,

Defendant.

Case No. 1:26-mj-0740-CDA

UNDER SEAL

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Corey McIndoe, being duly sworn, deposes and states the following:

1.    I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

2.    I am a Special Agent with Homeland Security Investigations (HSI) and have been so since April of 2019. I am currently assigned to the Homeland Security Task Force (HSTF) Group 5 in Baltimore, Maryland, where I am responsible for investigations involving transnational criminal organizations (TCOs) and foreign terrorist organizations (FTOs), with a nexus to the Baltimore Washington International (BWI) Airport and other regional airports, including those involving parcels. My duties and responsibilities include the investigation of civil and criminal violations of the United States Code. In 2019, as part of my employment with HSI, I attended the Criminal Investigator Training Program, which is a twelve-week basic program for all federal criminal investigators held at the Federal Law Enforcement Training Center in Glynco, Georgia. Additionally, I attended Homeland Security Special Agent Training, which was an additional

1

*KYH*

sixteen-week add on training. During both of these courses, instruction was given on basic investigative techniques; federal controlled substances laws; types of controlled substances; how controlled substances are manufactured, transported across borders, distributed, and sold; money laundering techniques; and electronic and physical surveillance techniques. Prior to HSI I was a Federal Police Officer employed by the U.S. Supreme Court since April of 2016. I received a Master of Arts in Criminal Justice from Fairleigh Dickinson University in September 2014.

3.      Since joining HSI as a Special Agent, I have participated in investigations of international narcotics trafficking organizations engaged in the unlawful importation, transportation, and distribution of controlled substances, and related money laundering activities. I have also become familiar with and utilized a wide variety of criminal investigative techniques. Consequently, I have become familiar with the phraseology and practices of those that abuse and illegally distribute controlled dangerous substances. I am familiar with the methods and techniques used by individuals to promote and facilitate unlawful activity, including but not limited to the use of electronic devices (such as cellular phones) and parcels to conduct narcotics trafficking.

4.      I have participated in numerous investigations that have utilized court-ordered electronic tracking devices; therefore, I am familiar with the lawful use of electronic surveillance equipment in investigations into the distribution of controlled dangerous substances. As a result of my law enforcement experience, I have debriefed defendants, cooperating witnesses, and others who have had experience in the manufacture, packaging, and distribution of controlled dangerous substances. Consequently, I have become familiar with the phraseology and practices of those that abuse and illegally distribute controlled dangerous substances. I am familiar with the methods and techniques used by individuals to promote and facilitate unlawful activity, including but not

2

*KYH*

limited to the use of electronic devices (such as cellular phones) and automobiles to conduct drug trafficking.

5.      I also know from my training, knowledge, and experience that cell phones and other smart devices often record the device's historical location data, indicating the location of stash houses, distribution points, and supply sources.  I know that the cellular telephone geolocation of a phone used by a drug trafficker can provide important evidence of:  (1) the location of the drug trafficking itself, including the spot where drug sales are conducted, solicited, or transacted; (2) the location where a drug dealer stores and stashes his drugs; (3) the location of suppliers, customers, or coconspirators that a drug dealer may meet with; (4) the location of meetings among various members of the conspiracy; (5) corroboration of physical surveillance; and (6) the overall pattern of travel for a particular drug trafficker.  Accordingly, the location of a cellular phone used by a drug trafficker can provide important evidence of drug trafficking activity.

6.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.      Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrants, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this affidavit is based upon my

3

*KYH*

personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals.

8.    This Affidavit is submitted in support of a criminal complaint and arrest warrant for Dante LAFAVORS (hereafter, "LAFAVORS"), charging him with violating 21 U.S.C. § 841 that is Possession with the Intent to Distribute Controlled Substances.

## PROBABLE CAUSE

*Law Enforcement Intercepts Two Packages*

9.    On December 09, 2025, Maryland State Police (MSP) parcel interdiction groups were conducting proactive operations at a United Parcel Service (UPS) facility in Laurel, Maryland. During these efforts, investigators identified and intercepted two suspicious wooden crates exhibiting multiple shipping anomalies consistent with parcels containing narcotics. Both crates were shipped from the same sender in Encino, California. One crate was addressed to an apartment in Baltimore, Maryland.  The other crate was addressed to a residence in Lewes, Delaware. The crates were removed from the delivery stream for further investigation.  The shipments displayed the following information (written below as shown on label):

   a.    The first wooden crate displayed the UPS Tracking number 1ZXH46520310500546 (**PARCEL #1**) and the sender and ship to information were as follows:[1]

   CHARINA TRAZO
   8187054442
   ENCINO MAIL & MORE
   18034 VENTURA BLVD
   ENCINCO, CA 91316

---

[1] UPS Tracking numbers are unique tracking numbers assigned only to individual shipments.

*KYH*

SHIP TO:
KL ENTERPRISE
434 PARK AVE
LEWES DE 19958

b.      The second wooden crate displayed the UPS Tracking number:

1ZXH46520308897132 (**PARCEL #2**) and the sender and ship to information

were as follows:

CHARINA TRAZO
8187054442
ENCINO MAIL & MORE
18034 Ventura BLVD
ENINCO, CA 91316

SHIP TO:
SHEENA COPELAND
777 SOUTH EDEN STREET APT #403
BALTIMORE, MD 21231

10.     MSP Sergeant Dave McCarthy and Canine Unit Bennett conducted a scan of

**PARCEL #1** and **PARCEL #2**.[2] Following positive alerts by Canine Bennett to the presence of

the odor of controlled substances, obtained search and seizure warrants to open them.[3] Upon

---

[2] Narcotics detection Canine Bennett is trained and certified to alert to the odor of controlled substances. These substances include Cocaine, Heroin, Methamphetamine, and Ecstasy. Upon location of one of these controlled substances, Bennett is trained to sit at the source of the odor. This is called an alert this alert may also indicate items recently contaminated with the odor of one or more of the controlled dangerous substances. Canine Bennett is assigned to Sergeant Dave McCarthy, of the Maryland State Police. Canine Bennett and Sergeant McCarthy receive monthly training in order to maintain Bennett's reliability in the detection of controlled dangerous substances.

[3] The warrant related to **PARCEL #1** was authorized by the Hon. Erik H. Nyce, District Court of Maryland.  The warrant related to **PARCEL #2** was authorized by the Hon. Marsha Russell, District Court of Maryland.

5

*KYH*

execution of the warrants, approximately 16.2 kilograms of suspected cocaine and fentanyl were recovered from **PARCEL #2**, and approximately 17.5 kilograms of suspected cocaine were recovered from **PARCEL #1**. Presumptive field tests for the crates yielded positive results for both cocaine and fentanyl.

### *Controlled Delivery of PARCEL #2*

11.     On December 11, 2025, members of the MSP parcel interdiction group conducted a controlled delivery of **PARCEL #2** to its intended destination at 777 South Eden Street, Baltimore, Maryland 21231 ("777 South Eden"). Prior to delivery, investigators removed the bulk amount of controlled dangerous substances from the crate and left one-package of suspected cocaine and one package of suspected fentanyl, each approximately one kilogram in weight, in the crate for the controlled delivery.

12.     777 South Eden is a luxury apartment building with a centralized mailroom for resident parcel deliveries. Parcels addressed to specific apartments are placed in the mailroom until retrieved by residents. I understand that when parcels are delivered to the mailroom, the management company sends an email alert to the resident regarding the package.

13.     During the delivery of **PARCEL #2**, investigators observed an additional wooden crate in the mailroom with similar characteristics, also addressed to the same recipient. The shipping label on this crate displayed the following information:

> a.     The third wooden crate displayed the UPS Tracking number 1Z0FD0270312314461 (**PARCEL #3**) and the shipper and send to information were as follows:

*KYH*

> NEXXI ACCESSORY
> 3239348986
> NEXXI ACCESSORY
> 7304 BEVERLY BLVD
> LOS ANGELES, CA 90036
>
> SHIP TO:
> 4152988634
> SHEENA COPELAND
> Apt 403
> 777 S EDEN ST
> BALTIMORE MD 21231

14.     At approximately 5:15 PM, a person, later identified as Dante Darnell LAFAVORS, was observed approaching the mailroom. LAFAVORS entered the mailroom briefly, then exited the mailroom while pushing a cart that contained **PARCEL #2** and **PARCEL #3**. A law enforcement officer identified himself as law enforcement and approached LAFAVORS and LAFAVORS abandoned the cart and attempted to flee.   Screenshots from security camera footage showing (i) LAFAVORS pushing the cart with PARCEL # 2 and PARCEL #3 and (ii) LAFAVORS attempting to flee are immediately below.



7

*KYH*





*KYH*

15.    LAFAVORS was confronted by other members of law enforcement in the lobby of 777 South Eden, where LAFAVORS gave up and was placed under arrest for the incident. Law enforcement recovered four cellphones, approximately $2,639 in U.S. Currency, and keys from LAFAVORS.

16.    Following LAFAVORS arrest, Sergeant McCarthy and Canine Bennett conducted a scan of **PARCEL #3**. Following a positive alert indicating the presence of the odor of controlled substances, investigators obtained a search and seizure warrant to open **PARCEL #3**.[4] Upon execution of the warrant, approximately 15.6 kilograms of suspected cocaine and suspected fentanyl were recovered from **PARCEL #3**. Presumptive field tests indicated positive results for both cocaine and fentanyl.

17.    The Maryland States Forensic Sciences Division tested the suspected controlled substances which were contained in PARCEL #2 and PARCEL #3 at the time LAFAVORS was pushing a cart with those parcels on them. **PARCEL #2** contained one package containing approximately 1005.6 grams of cocaine hydrochloride, a Schedule II controlled substance, and one package containing approximately 1001.4 grams of Fentanyl, a Schedule II controlled substance. **PARCEL #3** contained nine packages with a similar appearance and a total gross weight of approximately 11.103 kilograms. One of the nine packages was tested and was found to contain approximately 1005 grams of cocaine hydrochloride. **PARCEL #3** also contained two packages with a similar appearance and a total gross weight of approximately 2.466 kilograms. One of those two packages was tested and was found to contain approximately 1001.1 grams of cocaine

---

[4] The warrant to search **PARCEL #3** was authorized by the Hon. Stacey Mayer, Circuit Court of Maryland.

9

*KYH*

hydrochloride. **PARCEL #3** also contained two packages with a similar appearance and a total gross weight of approximately 2.145 kilograms. One of those two packages was tested and found to contain approximately 999.3 grams of fentanyl.

### The Investigation Continues

18.     During the week after the controlled delivery discussed above, the management company that operates 777 South Eden provided law enforcement certain records related to Apartment #403. These records identified "Sheena Copeland" as the lessee and sole occupant of Apartment #403. The term of the lease began on October 11, 2025, and the lease agreement appears to be signed by Sheena Copeland on October 9, 2025. Law enforcement met with an employee of the management company to secure these records and during that meeting the employee informed law enforcement that pursuant to the company's policy, someone from the company would conduct an inspection of Apartment #403.

19.     In late December 2025, law enforcement contacted an employee of the management company that operates 777 South Eden regarding a set of keys recovered from LAFAVORS on the day of his arrest. The employee identified the keys for an apartment door and mailbox in the building as well as a key fob used to access the parking garage for the building. The employee then confirmed that the apartment door key was for Apartment #403 within 777 South Eden by unlocking the door of Apartment #403 with the apartment door key recovered from LAFAVORS. The employee and law enforcement did not enter Apartment #403 at that time.

20.     Law enforcement secured footage from security cameras within 777 South Eden. That footage shows LAFAVORS entering the building from the garage on the fourth floor of the

*KYH*

building.  At the time, LAFAVORS was wearing a black coat and carrying a backpack on his back. A photo of this moment is immediately below.[5]



21.     When LAFAVORS claimed PARCEL #2 and PARCEL #3 from the mailroom, he was not wearing the coat and he did not have the backpack with him.  The screenshot above showing LAFAVORS fleeing shows him without the coat and backpack.

22.     In early January 2026, an employee of the management company contacted law enforcement regarding communications from the lessee of Apartment #403.  The employee explained that the lessee had requested a new key, claiming she lost hers.

23.     On January 6, 2026, law enforcement met with an employee of the management company, who informed law enforcement that the management company had conducted an

---

[5] The bottom right corner of the footage includes text indicating that the footage is from "2nd Floor Garage."  This text is incorrect as the camera that captured the footage is located on the fourth floor of the garage.

*KYH*

inspection of the apartment on the same day another employee had tested the apartment key recovered from LAFAVORS. The employee stated that during the inspection they discovered a black bag containing United States currency. The employee provided law enforcement photos taken inside the apartment showing that Apartment #403 appeared to be unoccupied. A drill and crowbar were located inside Apartment #403 at the time.

24.    Later on January 6, 2026, law enforcement executed a search warrant on Apartment #403 in 777 South Eden. The apartment was not occupied at the time and it appeared that no one was living in the apartment. More specifically, there was no food in the refrigerator, no dishes in the kitchen, no clothes in the closets, no sheets on the bed, and no personal items in the bedroom or bathroom. Law enforcement identified the black coat as well as a black backpack and a black and red backpack. The black and red backpack had approximately $600 in U.S. Currency in it.

25.    Law enforcement recovered a red and black drill and black crowbar with a yellow label from a closet in Apartment #403. Inserted into the drill was a bit that appears to the same type and size drill bit required to screw and unscrew the screws that were used to assemble **PARCEL #1, PARCEL #2,** and **PARCEL #3**. The drill and crowbar were submitted to the HSI Forensic Laboratory for latent print processing. No latent fingerprint or palmprint impressions were recovered from the drill. One latent fingerprint impression was recovered from the crowbar. That fingerprint impression was compared to known impressions for LAFAVORS and it was identified to LAFAVORS through a comparative analysis of the friction ridge detail for the impression and an FBI fingerprint card bearing impressions for LAFAVORS.

*KYH*

26. Law enforcement also recovered a box containing three black kilogram seized packages from the bathroom vanity of Apartment #403. Field testing for those packages indicated that they contained fentanyl, a schedule II controlled substance.

27. Law enforcement executed search warrants on the cellphones recovered from LAFAVORS. On one phone, law enforcement located a text conversation between LAFAVORS and a call number associated with the lessee of Apartment #403. In the text conversation, on November 28, 2025, LAFAVORS states, "Good morning this is Jamal Kirkland from 777 Eden st apts I changed my phone number so you can have it." Later in the same text conversation, the lessee provides LAFAVORS an Apple note which law enforcement believe contained information regarding an arrangement in which LAFAVORS sublet Apartment #403 from the lessee. Screenshots of the note were located on a separate phone recovered from LAFAVORS.

28. On the phone with the screenshots of the note related to Apartment #403, law enforcement located a screenshot of UPS tracking information from ups.com for **PARCEL #2**. On a third phone, law enforcement located a screenshot of a Facetime video call in which the shipping label for **PARCEL #2** was visible. On the same phone, law enforcement located a screenshot of a Facetime video call in which the shipping label for **PARCEL #3** is visible on another phone. Based on my training, knowledge, and experience, I know that narcotics traffickers often use Facetime to communicate, believing that law enforcement is unable to access such communications.

29. Based on my training, knowledge, and experience as well the evidence gathered to date, including: LAFAVORS attempting to flee when approached by law enforcement; LAFAVORS's apparent arrangement to sublet Apartment #403; LAFAVORS's use of a fictitious

13

1:26-mj-0740-CDA

*KYH*

name when subletting Apartment #403; the lack of any indication LAFAVORS's or anyone one else living in Apartment #403 on December 11, 2025; LAFAVORS fingerprint being on the crowbar, which he would have needed to open the parcels; the recovery of the drill with the correct drill bit in Apartment #403; LAFAVORS's coat and backpack being located in Apartment #403; the recovery of three bricks of suspected fentanyl in Apartment #403; and LAFAVORS possession of images depicting the shipping labels for **PARCEL #2** and **PARCEL#3** and the use of Facetime to communicate those images; I believe that on December 11, 2025, when LAFAVORS was in possession of **PARCEL #2** and **PARCEL #3**, LAFAVORS possessed those parcels knowing that they contained controlled substances.

## CONCLUSION

30. Accordingly, pursuant to the facts set forth above, I submit that probable cause exists for the issuance of a criminal complaint and warrant for the arrest of Dante LAFAVORS, who on or about December 11, 2025, knowingly possessed with intent to distribute controlled substances, in violation of 21 U.S.C. § 841.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

COREY M MCINDOE Digitally signed by COREY M MCINDOE
Date: 2026.03.25 10:20:25 -04'00'

Special Agent Corey McIndoe
Homeland Security Investigations

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on March 26 , 2026.

Honorable Charles D. Austin
United States Magistrate Judge
District of Maryland

14